IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| AVEPOINT, INC. ) | |
| ) | |
| AVEPOINT PUBLIC SECTOR, INC., ) | |
| ) | |
|    Plaintiffs ) | |
| v. ) | Case No. 7:19CV739 |
| ) | |
| ROBERT KNICKERBOCKER, ) | |
| ) | |
|    Defendant. ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS
FOR LACK OF VENUE AND/OR MOTION TO TRANSFER VENUE**

Plaintiffs AvePoint, Inc. ("API") and AvePoint Public Sector, Inc. ("APSI"), (collectively, "AvePoint"), submit this Response to the Motion to Dismiss for Lack of Venue and/or Motion to Transfer Venue of Defendant Robert Knickerbocker ("Knickerbocker").

## INTRODUCTION

AvePoint properly filed this action in this Court to resolve a controversy regarding Knickerbocker's claim for additional commissions under his 2019 Sales Representative Compensation Plan dated January 1, 2019 (the "Plan"). Complaint (Doc. 1) at ¶ 7. This dispute has a significant connection to Virginia. API and APSI are headquartered in Richmond and Arlington, Virginia. *Id.* at ¶¶ 1-2, 8. Knickerbocker was formerly employed by APSI as a Senior Account Executive in Arlington, Virginia. *Id.* at ¶¶ 3, 10. Throughout his employment with APSI, Knickerbocker worked and maintained his office in Arlington, Virginia. *Id.* at ¶¶ 11-12. API published the Plan and received Knickerbocker's Plan Acknowledgement Form in Richmond, Virginia. *Id.* at ¶ 14. APSI terminated Knickerbocker's at-will employment in Arlington, Virginia. *Id.* at ¶ 16. Eligibility determinations, calculations and payments under the Plan were performed in Virginia. *Id.* at ¶ 23.

AvePoint's action was properly filed in the Western District of Virginia. This Court has subject matter jurisdiction over this dispute, and the Declaratory Judgment Act provides AvePoint the requisite cause of action. This Court has personal jurisdiction over Knickerbocker and venue is proper. Nevertheless, AvePoint does not oppose the transfer of this action to either the Eastern District of Virginia, Alexandria Division (where Knickerbocker worked for APSI) or Richmond Division (where API published the Plan, received Knickerbocker's signed Plan Acknowledgement Form and performed eligibility determinations, calculations and payments under the Plan). In the interests of judicial economy and in an effort to save time and resources, AvePoint has offered to enter into a Consent Order transferring this action to Knickerbocker's choice of the Eastern District of Virginia, Alexandria Division or Richmond Division. Knickerbocker has not responded to AvePoint's offer.

Knickerbocker repeatedly acknowledges that venue is proper in the Eastern District of Virginia and this Court has discretion to transfer this action to the Eastern District of Virginia. Def. Mem. (Doc. 9) at 2, 5-6. AvePoint agrees with this – that is why it offered to enter into a Consent Order to this effect. Unfortunately, Knickerbocker has not responded to this offer and appears more interested in making ad hominem attacks against AvePoint rather than finding a practical solution. Knickerbocker's position is disingenuous. Knickerbocker asks this Court to dismiss rather than transfer this action, despite his own acknowledgement that the "general practice is to transfer a case to a forum where venue is proper." *Id.* at 6. Knickerbocker also alternatively asks this Court to transfer this action to Maryland rather than the Eastern District of Virginia, despite his own acknowledgement that, unlike the Eastern District of Virginia which is clearly a proper venue, "there is room for argument as to whether Maryland would have been a proper venue" for Knickerbocker's claim for additional commissions under his Plan. *Id.* at 4-5.

## ARGUMENT

### I. Venue is Proper in the Western District of Virginia.

Avepoint submits that venue is proper in the Western District of Virginia under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this District. Complaint at ¶ 6. Knickerbocker's assertion that "absolutely none of the events alleged in the Complaint occurred" in the Western District of Virginia is inaccurate and shows a fundamental misunderstanding of the nature of AvePoint's claim. Def. Mem. at p. 2.

AvePoint's Complaint asserts a claim under the Declaratory Judgment Act to resolve a controversy regarding Knickerbocker's claim for additional commissions under his Plan. *Id.* at ¶ 7. The Declaratory Judgment Act allows any court of the United States to "declare the rights and other legal relations of any interested party seeking such declaration," as long as there is a "case of actual controversy within its jurisdiction." 28 U.S.C. § 2201. AvePoint's Complaint identifies and attaches Knickerbocker's email threatening legal action that AvePoint received in Roanoke, Virginia on November 2, 2019, that created an actual controversy between the parties. Complaint at ¶ 28, Exhibit 6. "Threatened litigation can be sufficient to establish the actual controversy requirement." *Kettler Int'l, Inc. v. Starbucks Corp.*, 55 F. Supp. 3d 839, 847 (E.D. Va. 2014); *see also Volvo*, 386 F.3d at 593 (holding that the actual controversy prong was satisfied when the plaintiff received written and oral litigation threats from defendants and separate suits had been filed against it) (*citing GTE Directories Pub. Corp. v. Trimen Am., Inc.*, 67 F.3d 1563 (11th Cir. 1995) (holding that threat of future litigation gives rise to actual controversy)); *In re Chateaugay Corp.*, 201 B.R. 48, 67 (Bankr. S.D.N.Y. 1996) (communications "indicating a party's intent to take future legal action have been deemed a threat of litigation sufficient to create an actual controversy for adjudication").

AvePoint submits that a substantial part of the events giving rise to the claim occurred in this District because it received in Roanoke, Virginia on November 2, 2019, this email threatening litigation that established a definite and concrete case or controversy suitable for declaratory relief.  Complaint at ¶ 28, Exhibit 6.  AvePoint's receipt of this email in Roanoke, was the seminal event that gave rise to this claim.  Until receiving this email in Roanoke, AvePoint arguably lacked sufficient grounds to pursue this Declaratory Judgment Action.

Knickerbocker's complaint about "his litigation costs" and suggestion that this is "a suit he wasn't even entirely certain he wanted to bring given his modest means" is revisionist history.  Def. Mem. at 9.  Knickerbocker's November 2, 2019 email threatening litigation, and his prior communications leading up to it tell a different story and reveal an exuberant litigant with a penchant for casting aspersions and skating on the edge of ethics rules and appropriate decorum.

On September 10, 2019, Knickerbocker's counsel sent a letter to APSI in Virginia demanding that Knickerbocker be paid additional commissions allegedly owed under the Plan in the amount of $492,301, plus "consequential and incidental damages" in the amount of $50,000, for a total sum of $542,301 (the "First Demand Letter").  Complaint at ¶ 21, Exhibit 3.

The First Demand Letter accuses AvePoint of multiple violations of Maryland law despite the fact that Virginia law clearly applies to this dispute.  Knickerbocker's employment with APSI and his claim for additional commissions under the Plan are subject to the laws of Virginia.  APSI is a Virginia corporation, Knickerbocker worked for APSI at its headquarters in Arlington, Virginia, and Knickerbocker's employment is governed by Virginia law.  The Plan was published and administered in Virginia and the alleged breach (failure to pay commissions) occurred in Virginia.  The fact that Knickerbocker happens to reside in Maryland is irrelevant. He was an employee of a Virginia company working in its Virginia headquarters.  *Id.* at ¶ 22.

WOODS ROGERS PLC
ATTORNEYS AT LAW

In addition to demanding payment of this exorbitant sum in excess of half a million dollars and citing inapplicable Maryland law, the First Demand Letter uses inappropriate rhetoric and name calling referring to the circumstances under which Knickerbocker "was terminated as some kind of sick bon voyage salute" and the termination provisions of his Plan "as a form of modern-day slavery."  *Id.* at ¶ 24, Exhibit 3 at p. 3-4.

Even worse, the First Demand Letter falsely accuses APSI of committing a "criminal offense" by failing to pay Knickerbocker additional commissions under the Plan and improperly seeks to leverage this false accusation of criminal activity to negotiate a settlement of Knickerbocker's civil claim.  *Id.* at ¶ 25, Exhibit 3 at p. 5.

On September 30, 2019, Knickerbocker's counsel sent a second letter to APSI reiterating his demand and threatening "to file suit against your company on behalf of my client for the transgressions alleged and you will receive no further notice until service of process of our complaint" (the "Second Demand Letter").  Complaint at ¶ 26, Exhibit 4.

On November 2, 2019 at 4:30pm, AvePoint's undersigned legal counsel emailed a response letter to Knickerbocker's counsel (the "Response Letter") explaining that, contrary to the assertions in his First and Second Demand Letters, Knickerbocker does not have any cause of action arising from:  (1) APSI's termination of his employment as a Senior Account Executive; or (2) APSI's non-payment of additional commissions under his Plan.  In a detailed and measured response citing Plan provisions, relevant correspondence between the parties, and applicable Virginia legal authorities, I explained why Knickerbocker has no basis for challenging:  (1) the propriety of the termination of his at-will employment; or (2) the amount of commissions he received under the Plan.  Complaint at ¶ 27, Exhibit 5.  As these Virginia authorities confirm, Knickerbocker cannot state a viable claim or survive summary judgment.

Less than 25 minutes later, on November 2, 2019 at 4:53pm, Knickerbocker's counsel sent a reply email to my Response Letter demanding that I confirm whether I am "empowered to accept service of process on behalf of [my] client." I responded by email on November 2, 2019 at 5:11pm, answering that I was not authorized to accept service of process but would inquire, explaining that Virginia was the only proper forum, and asking Knickerbocker not to pursue a baseless claim that was contrary to the express terms and conditions of the Plan and applicable law. Unfortunately, Knickerbocker's counsel refused to see reason and responded by email on November 2, 2019 at 5:36pm: "Okay – we will serve their registered agent. We will be moving forward. Thanks for your attention!" Complaint at ¶ 28, Exhibit 6.

AvePoint's receipt of this seminal litigation threatening email in Roanoke, Virginia on November 2, 2019, created an actual controversy between the parties and was the event that gave rise to this claim. Complaint at ¶ 28, Exhibit 6. Congress in the Declaratory Judgment Act afforded parties a means to obtain relief in a situation like this. This Court has subject matter jurisdiction, AvePoint's Complaint states a cause of action under the Declaratory Judgment Act, this Court has personal jurisdiction over Knickerbocker, and venue is proper in this District under 28 U.S.C. § 1391(b)(2). Knickerbocker's Motion to Dismiss should therefore be denied.

## II. AvePoint Does Not Oppose Transfer to the Eastern District of Virginia.

Despite desiring to proceed in this District, in the interests of judicial economy and saving time and resources, AvePoint does not oppose transfer of this action to Knickerbocker's or this Court's choice of the Eastern District of Virginia, Alexandria Division or Richmond Division. A substantial part of the events giving rise to this claim occurred in both the Alexandria Division and the Richmond Division and either would be a fair and appropriate forum and consistent with the interests of justice.

WOODS ROGERS PLC
ATTORNEYS AT LAW

AvePoint opposes dismissal of this action because it is unnecessary, inappropriate and inefficient (unless Knickerbocker will confirm he will not pursue any claims against AvePoint in which case AvePoint will gladly consent to dismissal). As Knickerbocker himself acknowledges, the "general practice is to transfer a case to a forum where venue is proper" and "Plaintiffs won't be procedurally barred from simply refiling their action in a proper venue." Def. Mem. at 6, 8; *See Verosol B.V. v. Hunter Douglas, Inc.*, 806 F.Supp. 582, 594 (E.D.Va.1992) (holding that transfer is preferable to dismissal because "[t]ransfer would facilitate a more expeditious resolution of the merits of the controversy in a concededly proper forum and would avoid the costs and delay that would result from dismissal and refiling").

Finally, AvePoint adamantly opposes transfer of this action to Maryland. This is a Virginia employment dispute involving a Plan governed by Virginia law. Complaint at ¶¶ 11-12, 14, 16 and 23. Knickerbocker offers four grounds for alternatively requesting transfer of this action to Maryland all of which are entirely without merit. First, Knickerbocker claims that "he resides almost 300 miles away" from Roanoke - ignoring the fact that he resides only 46 miles from Alexandria. Def. Mem. at 9. Second, Knickerbocker claims that his counsel is licensed to practice in Virginia "only at the state level" and not "admitted to practice in Virginia Federal Court" – a fact that is both irrelevant and raises interesting questions as to how his Motion was properly filed in this Court. *Id.* at 9-10. Third, Knickerbocker erroneously asserts that any court "would look to Maryland law for guidance" (*Id.* at 10) - ignoring the fact that the law of the place of performance, Virginia, governs contract payment and performance issues such as those involved here. *Elite Entm't, Inc. v. Khela Bros. Entm't, Inc.*, 396 F.Supp.2d 680, 692 (E.D.Va.2005). Fourth, Knickerbocker's claim that this action should be transferred to Maryland as an "appropriate punishment" is baseless and unworthy of further response. Def. Mem. at 10.

WOODS ROGERS PLC
ATTORNEYS AT LAW

None of Knickerbocker's hyperbole provides any grounds for transferring this action to Maryland. This action should proceed in this Court or be transferred to the Eastern District of Virginia, Alexandria Division or Richmond Division – whichever Knickerbocker or the Court prefers. Given that Knickerbocker only lives 46 miles from Alexandria and is represented by attorneys with a Leesburg, Virginia office only 47 miles from Alexandria, transfer to the Alexandria Division hardly seems prejudicial, inconvenient or inappropriate. Knickerbocker should abandon his over-zealous attempt to paint AvePoint in a negative light and consent to transferring this action to his choice of the Eastern District of Virginia Alexandria Division or Richmond Division – both of which he concedes are proper venues. Def. Mem. at 2-3, 5-7.

Of all the potential outcomes of Knickerbocker's Motion (Doc. 8) one thing is certain: this action should <u>not</u> be transferred to Maryland under any circumstances. Aside from the fact that Knickerbocker happens to live there, this action has no connection whatsoever to Maryland. None of the events giving rise to the claim occurred in Maryland. Everything happened in Virginia. API and APSI do not even have offices in Maryland. Complaint at ¶ 9. Knickerbocker was hired, employed and terminated in Virginia, the Plan was published in Virginia and eligibility determinations, calculations and payments under the Plan were performed in Virginia. *Id.* at ¶¶ 11-12, 14, 16 and 23. Knickerbocker acknowledges this. Def. Mem. at 3. In contrast, nothing relevant happened in Maryland. A Maryland court would likely not have personal jurisdiction over AvePoint. *See BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558-59 (2017) (addressing limits of general jurisdiction); *Cross v. Fleet Res. Ass'n Pen. Plan*, 383 F. Supp. 2d 852, 855 (D. Md. 2005) (venue was not proper in Maryland when a Maryland-based Plaintiff brought suit against a Virginia-based pension plan because Plaintiff did not have sufficient minimum contacts with Maryland despite making "numerous presentations" there).

## **CONCLUSION**

For the foregoing reasons, this action should proceed in this Court or be transferred to the Eastern District of Virginia, Alexandria Division or Richmond Division.  Dismissal of this action would be unnecessary, inappropriate and inefficient (unless Knickerbocker will confirm he will not pursue any claims against AvePoint in which case AvePoint will gladly consent to dismissal) and this action should not be transferred to Maryland under any circumstances.  Knickerbocker has threatened pursuit of a breach of contract claim involving a Plan that was published and administered in Virginia for Virginia employees where the work he performed and the alleged breach (failure to pay commissions under the Plan) also occurred in Virginia.  The cause of action clearly arises entirely in Virginia and the case should remain in Virginia, even if it is transferred from the Western District of Virginia to the Eastern District of Virginia.

AvePoint remains hopeful that Knickerbocker will consent to the transfer of this action to his choice of the Eastern District of Virginia, Alexandria Division or Richmond Division.  If not, and Knickerbocker continues to pursue his request for dismissal and/or transfer to Maryland, AvePoint respectfully requests a hearing with the Court to present oral argument on this issue.

Dated:  December 9, 2019

PLAINTIFFS AVEPOINT, INC.
AVEPOINT PUBLIC SECTOR, INC.,

By:   /s/ Joshua F. P. Long
        Of Counsel

Joshua F. P. Long (VSB#65684)
WOODS ROGERS PLC
Wells Fargo Tower, Suite 1400
10 South Jefferson Street
Post Office Box 14125
Roanoke, Virginia  24038-4125
Telephone No. (540) 983-7600
Facsimile No. (540) 983-7711
jlong@woodsrogers.com

*Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 9th day of December, 2019, a true and accurate copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will send notice to all counsel of record:

/s/ Joshua F. P. Long